IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 5, 2004

## IN RE: B.L.R. (D/O/B 7/18/98) AND J.F.R. (D/O/B 7/18/98)

**Appeal from the Circuit Court for Sequatchie County**
**No. 7900      Buddy D. Perry, Judge**

_____

**No. M2004-00915-COA-R3-PT - Filed February 25, 2005**

_____

This is a termination of parental rights case wherein J.R.R., who is neither the biological father of the twins nor the husband of the mother of the twins, resists the termination of his parental rights. The trial court terminated his parental rights, and we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is affirmed.**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, J., joined.

Randal R. Boston, Crossville, Tennessee, for the appellant, J.R.R.

Jennifer Austin Mitchell, Dunlap, Tennessee, for the appellees, K.A.H., R.M.H. and W.M.

### MEMORANDUM OPINION[1]

J.R.R. and K.H. were formerly husband and wife, having been divorced in October 1996. Following the divorce, J.R.R. was incarcerated and K.H. (then K.R.) began a relationship with W.M. In October 1997, W.M. and KH began living together and KH became pregnant with the twin children, B.L.R. and J.F.R. W.M. is the children's biological father. She separated from W.M., and upon J.R.R.'s release from jail, K.H. and J.R.R. resumed cohabitation. The twins were born July

_____

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

18, 1998.  J.R.R. was again incarcerated in January of 1999 and was thereafter sentenced to the Tennessee Department of Correction on a burglary conviction.

On December 31, 2000, K.R. married R.H., and the couple has continuously resided with the children from the date of the marriage.

On October 7, 2002, R.H. and K.H. filed a petition to terminate the parental rights of J.R.R. and to allow R.H. to adopt the twin children.  W.M. joined in the petition agreeing to termination of his parental rights.

J.R.R. answered the petition contesting termination and asserting that he was the biological father of the twins.  He alleges:

> (1)     Petitioner will attempt to show that the Respondent was incarcerated at the time of conception.  This is true, however, Respondent had been on escape status from his place of confinement, returned home to the Petitioner, [K.R.] (now [K.H.]),; and until his recapture, had engaged in sexual relations with the Petitioner on numerous occasions.
>
> (2)     [K.R.], (now [K.H.], presented herself to the birthing hospital (Erlanger Hospital in Chattanooga, Tenn.), as a married woman; thereby fraudently [sic] evading the provisons of T.C.A. 68-3-302(c) and T.C.A. 68-3-305(b)(1), and thusly invoking T.C.A. 24-7-113, legitimatization [sic] of Respondent's voluntary acknowledgment of paternity.
>
> (3)     Petitioner cannot, now, rescind her voluntary signature on birth record naming Respondent as the father of the aforementioned twins.  T.C.A. 24-7-113(e)(1) limits the period for such a recission [sic] to 60 days of the date of the completion of the voluntary acknowledgment, **AND**
>
> (4)     Petitioner can **only** challenge her **voluntary** signature on the basis of fraud.  T.C.A. 24-7-113(e)(1).  **BUT,** not a fraud she initiated.
>
> C)     As per T.C.A. 24-7-112(a)(1)(C), DNA testing is required to rule on the Respondent's claim of Parentage.

Petitioners then moved for DNA testing of J.R.R. which motion was vigorously opposed by J.R.R. through his appointed counsel.  When in response to a court Order, he ultimately submitted to  DNA testing, the result of such test indicated that there was "zero percent" chance that he was the biological father of the twins.

Following a hearing of January 26, 2004, the trial court entered its Order on March 15, 2004, terminating the parental rights of J.R.R. and sustaining the Petition for Adoption by R.H. In this Order, the court found in pertinent part:

> 2. That based upon the paternity test results received into evidence as an Exhibit evidencing the Respondent is not the biological father of the minor children, [J.F.R.] and [B.L.R.], any rights the Respondent may have to the minor children would only be by a legal fiction. The court finds based upon the test results that any rights that the Respondent may have are hereby terminated.
>
> . . . .
>
> 9. The Court hereby finds by clear and convincing evidence that the Respondent has only rights of a legal fiction because his name appears on the children's birth certificate as the father. However, the Court finds that any rights that the Respondent may have are hereby terminated pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(i)(iii) and (iv), Tenn. Code Ann. § 36-1-113(g)(6) and Tenn. Code Ann. § 36-1-113(g)(9)(A). Therefore Court finds that it is the best interest of the minor children that the Respondent [J.R.R.]'s rights to the minor children are terminated forever and the Respondent shall have no further rights to notice regarding the proceedings of the children.

Upon these findings, the court terminated the parental rights of J.R.R., and he timely appealed.

On April 8th, J.R.R. filed pro se a number of motions, including a statement under Rule 24(d) of the Tennessee Rules of Appellate Procedure that no transcript of the evidence would be filed because:

> 1.   Tennessee Circuit court does not provide a stenographer to prepare a transcript of the proceedings in civil cases.
> 2.   Neither the Defendant/Appellant nor the Plaintiffs/Appellees procured the services of a professional stenographer to record and transcribe the minutes of the hearing conducted in this case.
> 3.   Defendant/Appellant will rely on default record, his copies of all motions filed in the trial court, whatever supplements to the record are permitted, and his appellate brief to present his issues on appeal.

It appears from the record that the Final Order of the Court of March 15, 2004, relieved Honorable Randal R. Boston from his assignment as attorney for J.R.R.

On April 8, 2004, J.R.R. filed a motion for the appointment of counsel on appeal in which he asserts that:

> A. Basis for [J.R.R.]'s appeal will be his contention, substantiated by prior case law, that the issuance of the Order directing him to submit to DNA testing, was in error and should be vacated.
>
> B. [J.R.R.]'s appointed counsel raised objections to Motion for DNA testing but was overruled.
>
> 3. Appellant is aware that there is nothing in the Tennessee Rules of Appellate Procedure mandating the right to appointed counsel in a civil case. However, he would argue that T.C.A. 36-1-113(f)(4)(A), which does mandate the appointment of counsel to incarcerated, indigent persons in parental termination actions, **IN NO WAY** limits his right of representation to the trial court level. And, considering what is at stake; the permanent loss of society with his children; constitutional arguments could be made.

No Order of Appointment for counsel on appeal appears in the record, but on April 23, 2003, this Court remanded the case to the trial court for the limited purpose of appointing counsel for J.R.R. after which counsel was appointed.

Appellant states two issues on appeal:

> (I) Whether the trial court's finding regarding grounds for termination of parental rights are supported by clear and convincing evidence.
>
> (II) Whether the trial court's finding that termination of parental rights of the Appellant was in the best interest of the minor children and was supported by clear and convincing evidence.

Since we are favored with neither a transcript of the evidence nor a statement of the evidence under Tennessee Rules of Appellate Procedure rule 24, there is no way for us to consider these issues, both of which require consideration of the evidence. Without the benefit of such a testimonial record, we are compelled to assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *Sherrod v. Wix*, 849 S.W.2d 780 (Tenn.Ct.App. 1992).

The lack of a testimonial record is marginalized in this case because the record that is before the court clearly and convincingly establishes that J.R.R. is entitled to none of the presumptions of parentage provided by Tennessee Code Annotated 36-2-304. This statute provides in pertinent part:

> **36-2-304. Presumption of parentage.** – (a) A man is rebuttably presumed to be the father of a child if:
>
> (1) The man and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days

after the marriage is terminated by death , annulment, declaration of invalidity, or divorce;

    (2) Before the child's birth, the man and the mother have attempted to marry each other in compliance with the law, although the attempted marriage is or could be declared illegal, void and voidable;

    (3) After the child's birth, the man and the mother have married or attempted to marry each other in compliance with the law although such marriage is or could be declared illegal, void and voidable; and:

      (A) The man has acknowledged his paternity of the child in a writing filed under the putative father registry established by the department of children services, pursuant to § 36-2-318; or

      (B) The man has consented in writing to be named the child's father on the birth certificate; or

      (C) The man is obligated to support the child under a written voluntary promise or by court order;

    (4) While the child is under the age of majority, the man receives the child into the man's home and openly holds the child out as the man's natural child;

    (5) Genetic tests have been administered as provided in § 24-7-112, an exclusion has not occurred, and the test results show a statistical probability of parentage of ninety-five (95%) or greater.

As to the first of these presumptions, the pleadings of the parties establish the divorce of J.R.R. and K.H. in October of 1996 and that more than 300 days had elapsed between the divorce and the birth of the twins on July 18, 1998.

As to the second presumption, there is neither pleading nor other assertion of any attempt by J.R.R. and K.H. to marry.

As to the third presumption, there is no allegation, pleading or other averment of an attempt to marry after the birth of the twins; J.R.R. has not acknowledged paternity on the putative father registry, never consented in writing for his name to appear on the birth certificate and has never obligated himself by written promise of child support. It is difficult to conceive how presumption number four could apply since while the infants were still in their infancy, J.R.R. began residing in the Department of Corrections in January of 1999 following his conviction for burglary. As to the fifth presumption, the genetic test administered in spite of his vigorous objections established the probability of parentage of J.R.R. to be zero percent (0%).

While the observation of the trial court that the asserted parental rights of J.R.R. constitute "a legal fiction" is perhaps an overstatement, the record before the court clearly and convincingly establishes that he is neither the biological father nor the husband of K.H.. This Court has held:

We have identified five substantial interest that support providing a procedure for assuring the timely and accurate resolution of parentage disputes. First, the State has

an interest in eliminating uncertainty and confusion regarding a child's parentage. Second, the State has an interest in enforcing a biological father's obligation to support his children in order to prevent them from entering the welfare rolls. Third, the State has a responsibility to eliminate disparate treatment between marital and non-marital children. Fourth, the State has an interest in protecting the interests of biological fathers who have made, or are prepared to make, a substantial personal investment in their relationship with their children. Finally, the State has an interest in enabling children to ascertain the identity of their biological parents for medical or other health reasons. Accordingly, we find that the State has compelling interests that justify establishing a procedure for resolving parentage disputes and for making this procedure available to not only the child and the child's mother and her husband, but also to any man claiming to be the child's biological father.

*State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 184-85 (Tenn.Ct.App. 2000).

None of these "substantial interests" apply to J.R.R.

The only thing disclosed by the record that connects J.R.R. with the children is the appearance of his name on the birth certificate. By the allegations of his own answer to the Petition, this was the unilateral action of K.H. at the time of the birth of the twins (an act that J.R.R. asserts to have been fraudulent in that K.H. claimed to have been married to him) and he never signed a written acknowledgment of paternity under Tennessee Code Annotated section 68-3-302 or Tennessee Code Annotated 68-3-305. So it is that, even in the absence of a testimonial record, such parental rights as J.R.R. may have are all but non-existent as is made clear by his own pleadings.

The trial court is clearly correct in the determination that clear and convincing evidence establishes that the best interest of the twin children is served by terminating the limited parental rights of J.R.R.

Judgment of the trial court is in all respects affirmed. Costs of cause are assessed against Appellant.

_____
WILLIAM B.CAIN, JUDGE